UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ROBERT LONDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-cv-653-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Robert London ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 14. Plaintiff also filed a reply brief. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 12) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed his applications for DIB and SSI on August 18, 2015, alleging disability beginning May 1, 2014 (the disability onset date), due to: (1) explosive anger disorder; (2) anxiety; (3) depression; (4) COPD; (5) cancer of right kidney; and (5) Hepatitis C. Transcript

("Tr.") 14, 171-78, 241-54, 269. The claims were denied initially on December 28, 2015, after which Plaintiff requested an administrative hearing. Tr. 14. On January 29, 2018, a hearing was held in Buffalo, New York, before Administrative Law Judge Stephen Cordovani (the "ALJ"). Tr. 14, 32-89. Plaintiff appeared and testified at the hearing and was represented by Jonathan Emdin, an attorney. *Id*. Rachel Duchon, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on May 2, 2018, finding that Plaintiff was not disabled. Tr. 14-27. On March 22, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's May 2, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

2

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his May 2, 2018 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016;

2.  The claimant has not engaged in substantial gainful activity since May 1, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3.  The claimant has the following severe impairments: major depressive disorder; intermittent explosive disorder; degenerative changes of the lumbar spine; osteoarthritis of the hands; asthma; COPD; and hepatitis C (20 CFR 404.1520(c) and 416.920(c));

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except he can make occasional use of ramps and stairs; can occasionally kneel, crouch, or crawl; can occasionally climb ladders, ropes, or scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; can perform no work with food or food products; can frequently handle and finger; can understand, remember and carry out simple instructions and tasks; can work in a low stress work environment  reflected by simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas or production rate pace, minimal changes in work routine and processes; and can have occasional interaction with supervisors, co-workers and the general public;

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7.  The claimant was born on August 29, 1963 and is an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 14-27.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on August 18, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 27. The ALJ also determined that based on the application for supplemental security benefits protectively filed on August 18, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id.*

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that ALJ failed to further develop the record and close evidentiary gaps in the record, resulting in an unsupported RFC. *See* ECF No. 12-1 at 15-21. Specifically, Plaintiff argues that the ALJ failed to further develop the record and obtain missing treating therapist and psychiatrist notes, and improperly weighed the opinions of Plaintiff's treating mental health providers without closing evidentiary gaps in the record. *Id.* at 15. In his second point, Plaintiff argues that the ALJ conducted an improper credibility analysis and failed to account for Plaintiff's episodic symptoms in the RFC findings. *Id.* at 21-25.

The Commissioner argues in response that the ALJ properly analyzed the medical opinion evidence and the other evidence of record to determine Plaintiff's RFC and gave good reasons for his conclusion that Plaintiff's allegations were not entirely consistent with other evidence in the record. *See* ECF No. 14-1 at 17-28. Accordingly, argues the Commissioner, the ALJ's RFC determination is supported by substantial evidence. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately weighed the medical evidence, including the treatment notes, objective findings, medical opinions, and Plaintiff's testimony. The ALJ's analysis was thorough and well-reasoned, and his RFC determination was supported by substantial evidence.

Plaintiff was treated by UMBD Urology for renal cell carcinoma. Tr. 446-61. In October 2014, Plaintiff had a laparoscopic right partial nephrectomy to remove a portion of Plaintiff's kidney. Tr. 452-53. Post-surgery, Plaintiff was told he could resume lifting, shower, and left and right arm weight-bearing as tolerated with no strenuous activity for four to six weeks and could return to work on November 3, 2014. Tr. 462. Plaintiff continued to follow up for surveillance. Tr. 446. At a follow-up appointment in June 2016, Plaintiff's musculoskeletal examination was normal, and his mental status examination was also normal. Tr. 449. Plaintiff complained of

chronic pain on the right side and received prescriptions for gabapentin and hydrocodone-acetaminophen. *Id*.

Plaintiff established care with Sami A. Raphael, M.D. ("Dr. Raphael") at Mount St. Mary's Hospital and Health Center on December 29, 2014. Tr. 391. Plaintiff stated he felt "okay" and had normal activity. Tr. 392. On examination, Plaintiff ambulated with no difficulty and had good range of motion in the upper and lower extremities. *Id*. He was advised to quit smoking. *Id*. Plaintiff followed up three months later, on March 27, 2015, and wanted his blood pressure checked. Tr. 388. He complained of being very tired and having no energy. *Id*. He continued to smoke. *Id*. Plaintiff reported he had normal activity. Tr. 389. Dr. Raphael noted that Plaintiff had Hepatitis C and needed further investigation since that was probably causing his fatigue. Tr. 389.

On September 24, 2015, Plaintiff presented to the Emergency Department ("ED") at Niagara Falls Memorial Medical Center ("Niagara Falls") stating he was depressed and homicidal. Tr. 397. Plaintiff was reported to be intoxicated. *Id*. Plaintiff stated he was "having trouble thinking" and "having vague homicidal thoughts." *Id*. Patient reported that "when he drinks he can get in fights and have no tolerance for people so rather than getting in a fight he came [to the ED]." Tr. 400. His musculoskeletal examination was normal (Tr. 398), and Plaintiff was released once he was sober (Tr. 400).

On October 20, 2015, Plaintiff saw Rajinder Bajwa, M.D. ("Dr. Bajwa"), stating he had been to the ED in September 2015 due to alcohol abuse. Tr. 403. Plaintiff indicated he had a history of renal cancer and underwent a nephrectomy in October 2014. *Id*. Plaintiff reported lumbar pain; he said he was on Norco, but Dr. Bajwa informed Plaintiff he would need a letter from Plaintiff's prior doctor before he would consider giving him pain medications. Tr. 404. When Plaintiff returned to Dr. Bajwa on December 22, 2015, he stated he could not get a letter from his doctor

but continued to complain of chronic lumbar pain. Tr. 519. Plaintiff's musculoskeletal exam showed intact range of motion. Tr. 520. Plaintiff received a prescription for Tramadol. Tr. 521.

At an appointment on May 3, 2016, Plaintiff wanted to follow up on his Hepatitis C. Tr. 516. He had missed appointments and was not able to provide any good reason. *Id*. His musculoskeletal examination was normal, and his mental status exam showed clear cognition and good eye contact, and his thought processes were linear and goal directed. Tr. 517. Plaintiff's test results regarding his Hepatitis C were pending. *Id*. When Plaintiff followed up on May 17, he was assessed with simple bronchitis and received tobacco abuse counseling. Tr. 514. By May 31, 2016, Plaintiff reported he had no energy. Tr. 510. Plaintiff continued to see Dr. Bajwa regularly through November 2017. Tr. 471-510. In November 2017, Plaintiff continued to complain of back pain and was diagnosed with sciatica. Tr. 472. The record notes that Plaintiff's Hepatitis C had been treated with a 12-week course of Zepatier which finished in December 2016. *Id*. Plaintiff tested positive for cocaine on April 3, 2017, and his prescription for Tramadol was discontinued for his safety. *Id*. Plaintiff was counseled not to use illicit drugs. *Id*.

Plaintiff attended regular outpatient mental health treatment at CMHC Psychiatric ("CMHC") from approximately May 2015 to April 2018. Tr. 554-69. From June 2015 to April 2016, Plaintiff attended therapy appointments with social worker Chris Kjowski ("Mr. Kjowski") every two weeks; and from May 2016 to February 2018, Plaintiff attended therapy sessions every two weeks with Nicole Pera ("Ms. Pera") and Sara Andrew ("Ms. Andrew"). Tr. 554-56. Plaintiff was also followed by Viktor Yatsynovich, M.D. ("Dr. Yatsynovich") from July 2015 to February 2018. *See id*.

At a psychiatric evaluation appointment on July 23, 2015, Plaintiff said he last worked as a furnace operator, but he had quit his job due to anger problems. Tr. 568. Plaintiff stated he felt

anxious and overwhelmed constantly. *Id*. He had an upcoming court date for domestic violence because "he lost control and hit his girlfriend," and said he had previously spent three years in prison due to assault *Id*. Plaintiff denied a history of major depressive episodes; he had no history of hypomanic or manic symptoms; and he reported no substance use history. *Id*.

On August 21, 2015, Plaintiff had a follow-up appointment with Dr. Yatsynovich. Tr. 567. Plaintiff said he could not tolerate one of his medications due to nightmares, and he stopped taking it. Dr. Yatsynovich reported that Plaintiff smelled of alcohol, and after being confronted with this, Plaintiff admitted he drank a six-pack of beer the day before. *Id*. Plaintiff told his provider, "I'm not an alcoholic. I'm doing this once in a "blue moon." *Id*.  Plaintiff denied any new concerns and reported he was applying for social security. *Id*. On examination, Plaintiff was alert and oriented; he showed intact memory for recent and remote events; his thought processes were linear; and his speech was normal. *Id*. He was polite, cooperative, and mildly anxious during the interview; however, he denied any depressive symptoms; he showed a normal level of attention and concentration; and his insight and judgment were fair. *Id*. Dr. Yatsynovich adjusted Plaintiff's medications and told him to cut down on drinking. *Id*.

In November 2015, Plaintiff had a medication management appointment with Dr. Yatsynovich. Tr. 566. Plaintiff reported feeling anxious but stated he was able to stay away from drinking and using drugs. *Id*. He stated the last time he used cocaine was two months ago, but he was "vague about his drinking problems" and "minimize[ed] his issues." *Id*. Plaintiff reported he was compliant with all medications and denied having any side effects. *Id*. His mental status examination was essentially unchanged from prior appointments. *Id*. Plaintiff was diagnosed with generalized anxiety disorder, cocaine and alcohol use disorder, and rule out polysubstance

dependence. *Id*. Plaintiff's medications were adjusted, and he was warned about the negative effects of alcohol and his medications. *Id*.

On December 1, 2015, Mr. Kjowski completed a treating source statement requested by the state agency. Tr. 411-12. Mr. Kjowski reported that Plaintiff attended counseling sessions since June 5, 2015 and stated his symptoms were consistent with intermittent explosive disorder and generalized anxiety disorder. *Id*. Mr. Kjowski stated that Plaintiff was currently prescribed Effexor XR and had been compliant with his medication, counseling, and therapeutic suggestions. *Id*. Mr. Kjowski recommended that Plaintiff not seek employment until he was able to manage anger and learn to interact appropriately work with peers/others. *Id*.

By January 11, 2016, Plaintiff stated he was doing better on his medications, and he was happy with his improvement since his last visit. Tr. 565. On examination, no gross cognitive deficits were noted. *Id*. Plaintiff was polite and cooperative and showed good eye contact; his mood was improved; and his affect was full range and appropriate. *Id*. He was diagnosed with generalized anxiety disorder and rule out PTSD, and his medications were adjusted. *Id*.

At an appointment in March 2016, Plaintiff denied using alcohol and drugs, but he was noted to smell of alcohol. Tr. 564. When confronted, Plaintiff admitted "he drinks sometime[s]." *Id*. The record notes that Plaintiff "was focused on getting Klonopin," but he was told he could not be prescribed Klonopin while using alcohol. *Id*. Dr. Yatsynovich discussed potential treatments with Plaintiff and adjusted Plaintiff's medications. *Id*.

When Plaintiff returned on May 11, 2016, he stated he felt more anxious and did not think his medication was effective. Tr. 563. He said he was not using alcohol or drugs, and his medications were adjusted again. *Id*. By July 2016, Plaintiff stated he was feeling more overwhelmed since he got into a fight with family members while drinking. Tr. 562. Plaintiff said

he last drank four to five days ago, but after he "was confronted due to a smell of alcohol," he admitted to drinking beer daily, although he was vague about the amount. *Id*. The record notes that Plaintiff "was focused on getting benzodiazepines." *Id*. Plaintiff's Klonopin was discontinued due to his ongoing substance use, and his other medications were refilled. *Id*.

By August 31, 2016, Plaintiff continued to report he felt anxious. Tr. 561. Plaintiff reported he had been staying in his room most of the time because he could not tolerate being around people or his girlfriend for a long time. *Id*. Plaintiff said he stopped drinking for three weeks and was focused on maintaining sobriety. *Id*. Plaintiff was restarted on Klonopin, but he was told he needed to maintain sobriety. *Id*. Plaintiff continued to see Dr. Yatsynovich in October 2016, and January, August, and November 2017. Tr. 557-60. On November 14, 2017, Dr. Yatsynovich completed a mental health report, in which Plaintiff was diagnosed with generalized anxiety disorder, moderate. Tr. 552. He checked boxes to indicate that, from a mental health perspective, Plaintiff was unable to work for 12 or more months. *Id*.

On May 16, 2017, Plaintiff went to the Niagara Falls ED reporting he had been assaulted three days prior. Tr. 464. Plaintiff had been at the corner store and did not know who assaulted him. *Id*. He had mild bruising under the left eye. *Id*. Plaintiff said he had a headache and drank two beers to try to stop the headache. *Id*. He had tenderness to palpitation to the right area under the eye, jaw, and cheek. Tr. 465. He denied back pain, stiffness and numbness in the upper and lower extremities. *Id*. On examination, Plaintiff's back showed normal range of motion, and his musculoskeletal exam was normal with normal strength. Tr. 466. Plaintiff's nose was fractured, and on release, he was told to follow up with his primary care doctor and the concussion clinic Tr. 468.

On December 14, 2015, consultative examiner Gregory Fabiano, Ph.D. ("Dr. Fabiano"), conducted a psychological consultative exam of Plaintiff. Tr. 414-19. Plaintiff reported sleep problems, loss of appetite, explosive anger, dysphoric mood, loss of usual interests, irritability, concentration difficulties, and social withdrawal. Tr. 415. He also reported symptoms of anxiety stating he forgot things and had to get away from people. *Id*. He said medication helped calm him down and was effective most of the time. *Id*. He also reported problems with memory and concentration. *Id*. He denied any problems with alcohol or drugs. *Id*. Plaintiff reported he was charged with assault in 2000 and served five years in jail, and he said he had "been in trouble numerous times for domestic [violence]." *Id*.

On examination, Plaintiff's demeanor and responsiveness to questions was cooperative. Tr. 416. His manner of relating, social skills, and overall presentation were adequate; his motor behavior was normal; and his eye contact was appropriate. *Id*. His expressive and receptive language were adequate; his thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; his mood was neutral, his affect was in the full range; and he had appropriate speech and thought content. *Id*. Plaintiff' was fully oriented; but Dr. Fabiano noted that Plaintiff's attention and concentration and recent and remote memory skills were mildly impaired, perhaps due to some emotional distress secondary to depressed mood. *Id*. His insight and judgment were fair. Tr. 417.

Dr. Fabiano diagnosed major depressive disorder, panic disorder, and intermittent explosive disorder. Tr. 417. He opined that Plaintiff did not appear to have any evidence of limitations in following and understanding simple directions and instructions; performing simple tasks independently; maintaining a regular schedule; learning new tasks; performing complex tasks independently; or making appropriate decisions. *Id*. Dr. Fabiano further opined that Plaintiff

appeared to have moderate limitations in maintaining attention and concentration; relating with others; and appropriately dealing with stress. *Id*. Finally, Dr. Fabiano noted that while the results of the evaluation appeared to be consistent with psychiatric problems, that, in itself, was not significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id*.

On December 14, 2015, Plaintiff attended a consultative internal medicine examination with Michael Rosenberg, M.D. ("Dr. Rosenberg"). Tr. 420-24. Plaintiff said he had a history of arthritis in his hands, knees, and ankles since 2013. Tr. 420. Plaintiff stated his pains were constant and were made worse with use, including walking, standing too long, and bending. *Id*. Plaintiff reported receiving treatment for Hepatitis C. *Id*. He said he smoked up to half a pack of cigarettes per day, and he denied alcohol or street drug use. Tr. 421. Plaintiff could cook five days a week and do light cleaning. Tr. 421. He also did laundry once a week and could do light shopping. *Id*. He could manage his personal care, and he watched television and listened to the radio. *Id*.

On examination, Plaintiff appeared in no acute distress. Tr. 421. No shortness of breath was noted; his gait, station, and stance were normal; and he showed no noticeable limp. *Id*. His squat was limited by right knee and ankle pain. Tr. 421. He used no assistive devices; he needed no help changing for the exam or getting on and off the exam table; and he could rise from his chair without difficulty. *Id*. Plaintiff's musculoskeletal examination showed full flexion and extension in the cervical and lumbar spine; his thoracic spine was normal; and straight leg raise testing was normal. Tr. 422. He showed decreased range of motion in the right ankle. *Id*. His joints were stable, but he had pain with range of motion of the right ankle, right knee, and in his hands. *Id*.  He had tremors in both hands; and his strength was 4/5 in the upper and lower extremities. *Id*. There was no muscle atrophy evident. Tr. 423.

Dr. Rosenberg diagnosed hand pain, right knee and ankle pain, all mild. Tr. 423. Plaintiff had Hepatitis C, asthma, COPD, and flexion contracture of the first finger of the left hand. *Id*. Dr. Rosenberg indicated that Plaintiff had mild restrictions for activity that entailed repetitive or prolonged use of both hands; mild restrictions for activity that entailed prolonged and uninterrupted squatting due to his right knee and ankle pain; and mild restrictions for activity that involved prolonged and uninterrupted standing and walking. *Id*. Finally, Dr. Rosenberg opined that Plaintiff needed to avoid smoke, dust, and other known respiratory irritants. *Id*.

Plaintiff submitted medical documentation for treatment at Niagara Falls from June 2010 through October 2017, most of which appears to be duplicative of records already in the file. Tr. 90-140.

Plaintiff argues that ALJ failed to further develop the record and obtain missing therapy records; improperly weighed the opinions of Plaintiff's treating mental health providers; and conducted an improper credibility analysis, resulting in an unsupported RFC. *See* ECF No. 12-1 at 15-25. For the reasons discussed below, the Court finds that the ALJ properly took into account the medical evidence in the record on the whole, including the medical opinion evidence, and incorporated into Plaintiff's RFC those impairments and restrictions supported by the record as a whole. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'").

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the

ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d

at 588. Furthermore, the evaluation of the consistency of Plaintiff's allegations and the medical evidence of record is interrelated: "[t]he ALJ's decision to discount [plaintiff's] credibility influenced the ALJ's weighing of medical opinions that were based in part on [plaintiff's] reports, and the ALJ's evaluation of the medical opinions in turn informs whether medical evidence supported" the ALJ's RFC determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Here, the ALJ properly analyzed the opinions, as well as the other evidence of record, when developing Plaintiff's RFC. Tr. 20-25. *See* 20 C.F.R. §§ 404.1527, 416.927.[2] With regard to Plaintiff's physical limitations, the ALJ properly discussed the opinions of consultative examiner, Dr. Rosenberg, giving it great weight. Tr. 24, 420-24. An ALJ may rely on the opinion of a consultative examiner. *See Camille v. Colvin*, 652 F. App'x 25, 27 n.2 (2d Cir. 2016); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (report of a consultative physician may constitute substantial evidence to contradict the opinion of a treating physician); 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

The ALJ noted Dr. Rosenberg's opinion that Plaintiff had only mild restriction for prolonged use of the hands, squatting, standing, and walking and had to avoid respiratory irritants. Tr. 24. As the ALJ explained, this opinion was consistent with the record as a whole, in that it documented Plaintiff's osteoarthritis, degenerative disc disease, COPD, and Hepatitis C. *Id*. The ALJ added that the opinion was further supported by Plaintiff's generally unremarkable

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, although the agency's final decision was issued on May 2, 2018, after the effective date of the final rules, Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

examinations and the extent of his activities, suggesting the ability to perform light work. Tr. 24. Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion.

The ALJ also properly gave great weight to the assessment following Plaintiff's October 2014 nephrectomy stating that Plaintiff needed four to six weeks of recovery with no heavy lifting and should not return to work until November 3, 2014. Tr. 24, 461-62. The ALJ noted that this assessment appropriately reflected a period of acute recovery after surgery. Tr. 24. However, the ALJ gave little weight to the assessment of disability on a long-term basis, as Plaintiff's procedure did not have any long-term residual effects. Tr. 24, 461-62. In addition, disability under agency regulations is for a minimum 12-month period, and Social Security disability is not meant to cover short term post-surgical recovery. *See* 20 C.F.R. §§ 404.1505, 416.095 (definition of disability).

Regarding Plaintiff's mental limitations, the ALJ properly gave great weight to the opinions of Dr. Fabiano. Tr. 24, 416-17. As noted above, Dr. Fabiano diagnosed major depressive disorder, panic disorder, and intermittent explosive disorder and opined that Plaintiff did not appear to have any evidence of limitations in following and understanding simple directions and instructions; performing simple tasks independently; maintaining a regular schedule; learning new tasks; performing complex tasks independently; or making appropriate decisions. Tr. 417. Dr. Fabiano also opined that Plaintiff appeared to have moderate limitations in maintaining attention and concentration; relating with others; and appropriately dealing with stress. Tr. 417. As the ALJ explained, this opinion was consistent with the record as a whole, which documented Plaintiff's positive response to medication and counseling, with only mild objective mental deficits. Tr. 24-25.

The ALJ also properly discounted the opinions of Dr. Yatsynovich and Plaintiff's other mental health treatment providers at CMHC. Tr. 25, 411, 433, 552. First, the ALJ noted that these

providers' opinions that Plaintiff could not work were conclusory statements on an issue reserved to the Commissioner. Tr. 25. A treating physician's conclusion that a claimant cannot work is entitled to no deference "because a finding of disability is one reserved for the Commissioner." 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). As the ALJ also noted, Dr. Yatsynovich's opinions lacked any functional assessment of Plaintiff's work-related abilities. Tr. 25. Furthermore, the ALJ noted that the lack of any functional assessment in the treatment record combined with Plaintiff's documented level of function and his activities provided a basis for giving little weight to such opinions. *Id.*

The ALJ also gave some weight to the statement of one of Plaintiff's CMHC counselors, Mr. Kjowski, that Plaintiff should not work until he could manage his anger. Tr. 25, 421. The ALJ noted that the statement was not a functional analysis of Plaintiff's work-related abilities and was too vague to be given greater weight, in spite of it being made by a treating provider. Tr. 25. Furthermore, Plaintiff's therapists are not acceptable medical sources under the regulations, but rather are "other" sources. *See* 20 C.F.R. § 416.927(f)(1)-(2). "[W]hile the ALJ is certainly free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008) (citing *Mongeur v. Heckler*, 722 F.2d at1039 n.2). An ALJ is "free to discount the assessments [of such sources] accordingly in favor of the objective findings of other medical doctors"); *see Saxon*

*v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of 'other sources,'" as long as she "address[es] and discuss[es] the opinion").

An ALJ's decision should, however, reflect consideration of the information from an "other" source so that a subsequent reviewer may follow the ALJ's reasoning, which the ALJ did in this case. Tr. 25. *See* 20 C.F.R. §§ 404.1513(a) & (d), 416.913(a) & (d). As noted above, the ALJ explained that these opinions did not provide functional limitations, and statements that Plaintiff was unable to work were statements on an issue reserved for the Commissioner. Tr. 25, 411, 436-39. The ALJ also explained that these opinions were inconsistent with Plaintiff's documented function and activities. Tr. 25. As the ALJ noted, the record documents a positive response to medication with Plaintiff generally demonstrating only mild mental deficits; he was able to maintain relationships with a friend, his mother, and his girlfriend; and he was able to shop in stores. *Id*. Accordingly, the ALJ's conclusions regarding the weights assigned to all the mental health treatment providers are supported by substantial evidence.

To the extent that Plaintiff argues that the ALJ overlooked evidence of Plaintiff's bipolar disorder, traumatic brain disorder, and headaches (see ECF No. 12-1 at 21), Plaintiff fails to cite any evidence in the record supporting these diagnoses. With respect to bipolar disorder, there is one progress note from Dr. Yatsynovich dated November 13, 2017 that includes a diagnosis of bipolar disorder (Tr. 557), but in many of his other records, including his November 14, 2017 medical source statement, Dr. Yatsynovich indicated only that Plaintiff had generalized anxiety disorder (Tr. 552, 560-67). However, even if the diagnosis was bipolar disorder versus generalized anxiety disorder, Plaintiff fails to show how that would have changed the analysis considering that the ALJ gave Plaintiff very significant mental limitations. Tr. 19. Similarly, Plaintiff's assertion

19

that his ED visit in May 2017 after he had been assaulted supports a diagnosis of traumatic brain disorder and headaches is unsupported by the record. The records show that Plaintiff had a headache from this and drank two beers to try to stop the headaches. Tr. 343. Plaintiff's nose was fractured, and he was released to follow up with his primary care doctor and was told to follow the concussion clinic. Tr. 468. Furthermore, at an appointment with Dr. Yatsynovich in November 2017, there were no gross cognitive changes noted. Tr. 557. Accordingly, Plaintiff fails to show how this evidence supports a determination that the ALJ erred.

Plaintiff also complains there are missing treating therapist and psychiatrist notes. *See* ECF No. 12-1 at 15-19. Plaintiff even cites to alleged "missing treatment notes" (*id*. at 11) and essentially argues that the ALJ was obligated to obtain those records (*see id*. at 15-19). Plaintiff's argument is without merit. "The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez*, 77 F.3d at 48); *see also Benman v. Comm'r of Social Security*, 350 F. Supp. 3d 252, 259-60 (W.D.N.Y. 2018) (where the ALJ did not rely on any treating source opinion evidence in determining the plaintiff's RFC, "the issue is whether the record is clear, and contains some useful assessment of the claimant's limitations from a medical source sufficient to support the RFC finding").

At the hearing, Plaintiff's counsel stated he believed there were additional records from Dr. Yatsynovich that were not in the file.  Tr. 36. The ALJ gave Plaintiff's counsel 10 days to submit additional documents and explained that if there were other problems or difficulties, Plaintiff needed to bring them up in a letter with an explanation. Tr. 38. Thereafter, "Exhibit 19F" was received and entered into evidence, and there is no indication from Plaintiff that there were any problems or difficulties in obtaining the records. Tr. 553-69. Furthermore, although Plaintiff

submitted documents to the Appeals Council, none of these included records from these treatment providers that Plaintiff indicates are missing. *See* Tr. 90-140.

Additionally, a challenge that the record must be supplemented by the ALJ will not prevail without an explanation of "how it would have affected [the] case." *Reices-Colon v. Astrue*, 523 F.App'x 796, 799 (2d Cir. May 2, 2013). Here, Plaintiff simply argues that the record was incomplete, but he does not argue with any specificity how these records would have affected the case. Even though the record does not contain notes from every therapy visit, a sufficient record of Plaintiff's mental health treatment was before the ALJ. As discussed above, there is ample medical evidence supporting the ALJ's decision, including numerous treatment records from Dr. Yatsynovich and Plaintiff's therapists, as well as Dr. Fabiano's examination report and opinion. *See Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (summary order) (2d Cir. 2012) (holding that the ALJ was not required to further develop the record when the available evidence was adequate to determine that the claimant was not disabled); *Johnson v. Colvin*, 669 F. App'x at 46 (explaining that "because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion'"); *see also Jones v. Colvin*, No. 13-CV-06443, 2014 WL 2560593, at *5 (W.D.N.Y. June 6, 2014) (acknowledging that while the Agency has a duty to develop the record, that duty is not limitless).

Here, the record is clear and contains sufficient evidence to provide a useful assessment of Plaintiff's mental limitations. *Benman v. Comm'r of Social Security*, 350 F. Supp. 3d at 259-60. Thus, Plaintiff's argument that the ALJ failed in his duty to develop the record is meritless. *See Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the

mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record"). Accordingly, Plaintiff's argument fails, and the Court finds no error.

Next, Plaintiff argues that the ALJ conducted an improper credibility analysis and failed to account for Plaintiff's episodic symptoms in the RFC findings. *See* ECF No. 12-1 at 21-25. Subjective symptomatology cannot, by itself, be the basis for a finding of disability. 20 C.F.R. § 416.929(a); SSR 16-3p. While an ALJ must take Plaintiff's claims into account, he need not accept subjective complaints without question. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, the ALJ exercises discretion in weighing the consistency of Plaintiff's allegations in light of the other evidence in the record. *Id*. Great deference should be given the ALJ's judgment because he heard the witness testify and observed his demeanor. *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); *Serra v. Sullivan*, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). It is the function of the Commissioner, and not the courts, to appraise the credibility of claimants. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

In this case, the ALJ cited objective evidence of record that undermined Plaintiff's allegations of disabling symptoms. Tr. 16-17. *See* 20 C.F.R. §§ 404.1521, 416.921 ("Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). As the ALJ explained, in spite of Plaintiff's reports of fatigue and pain, Plaintiff was regularly observed to be alert, oriented, well appearing, and in no distress, which suggests that Plaintiff's symptoms were not as severe or as

frequent as alleged. Tr. 21, 344, 388, 391, 404, 448, 471, 475, 477, 481, 484, 487, 489, 492, 495, 498, 501, 507, 511, 514, 517, 520.

With respect to his asthma and COPD, the ALJ noted that Plaintiff had only sporadically demonstrated diminished air entry, and he exhibited good air movement at a majority of his treatment visits. Tr. 21, 388, 392, 404, 471, 475, 477, 481, 484, 487, 489, 492, 495, 498, 501, 507, 511, 514, 517, 520. Examination findings frequently revealed clear lungs and no wheezes, rales, or rhonchi. Tr. 22, 344, 388, 392, 404, 448, 471, 475, 477, 481, 484, 487, 489, 492, 495, 498, 501, 507, 511, 514, 517, 520.

Despite Plaintiff's claims of osteoarthritis of the wrists and degenerative disc disease, the ALJ noted that examinations continually demonstrated full muscle strength at 5/5 in the upper and lower extremities, intact sensation, normal extremity range of motion, and a normal gait. Tr. 22, 389, 392, 404, 449, 471, 475, 477, 481, 484, 487, 489, 492, 495, 498, 501, 507, 511, 514, 517, 520.

Regarding Plaintiff's history of Hepatitis C, the ALJ noted that treatment notes indicated Plaintiff's follow-up had been intermittent, and in May 2016, he had missed appointments without any good reasons. Tr. 22, 516. Thus, it was reasonable for the ALJ to conclude that Plaintiff would have complied with his treatment providers' recommendations if he had disabling symptoms. *See, e.g.*, *Wilson v. Colvin*, No. 6:16-CV-06509, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017) ("It was within the ALJ's discretion to conclude that Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her such as chiropractic treatment, physical therapy, and epidural injections."); *Nicholson v. Colvin*, No. 6:13–CV–1296, 2015 WL 1643272, at *7 (N.D.N.Y. April 13, 2015) ("The ALJ properly considered Plaintiff's failure to comply with medication treatment as

prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen.").

As for Plaintiff's mental limitations, the ALJ observed that although Plaintiff continued to report symptoms of anxiety and difficulty getting along with others, mental status examinations demonstrated that Plaintiff was polite, cooperative, alert, and oriented with intact memory, good eye contact, normal attention and concentration, no cognitive deficits, and generally only mild deficits in mood and affect. Tr. 23, 557, 559-60, 563-66. Further, during appointments for his physical conditions, the ALJ considered that Plaintiff had been regularly observed to have a normal appearance, clear thoughts, good eye contact, intact cognition, and normal speech. Tr. 23, 345, 449, 404, 471, 475, 477, 481, 484, 487, 489, 492, 495, 498, 501, 507, 511, 514, 517, 520. This objective evidence discussed by the ALJ indicates that Plaintiff's allegations of disabling physical and mental impairments are not as severe as alleged. Tr. 21-23.

In addition to the objective medical evidence, the ALJ also discussed various inconsistencies in the record. Tr. 23. For example, at both of his consultative examinations, Plaintiff denied any history of drug of alcohol use or problems. Tr. 23, 415, 420. However, the ALJ noted that the record documented Plaintiff's history of cocaine use, emergency treatment in 2015 due to intoxication, and that he smelled of alcohol at several mental health visits. Tr. 23, 56, 476, 562, 564, 566-67. When he was confronted by providers that he smelled of alcohol, Plaintiff admitted to drinking, and it was noted that he was focused on getting Klonopin. Tr. 562, 564. Plaintiff was also noted to be "vague" about his drinking problems and minimized his issues. Tr. 562, 566. The use of substances such as drugs and alcohol provide an alternative explanation for the amount of treatment that Plaintiff has sought. *See Morgan v. Berryhill*, No. 1:15-CV-00449 (MAT), 2017 WL 6031918, at *5 (W.D.N.Y. Dec. 5, 2017) ("[A] claimant's misuse of medication

is a valid factor for an ALJ to consider." (citation omitted)); *Weakland v. Astrue*, No. 10-CV-519S, 2012 WL 1029671, at *5 (W.D.N.Y. Mar. 26, 2012) ("Plaintiff's drug seeking behavior serves to generally discount her testimony as it relates to the severity of her symptoms." (citations omitted)); *see also Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (drug-seeking behaviors cast a "cloud of doubt" over the legitimacy of a claimant's numerous doctor visits and discredits allegations of disabling pain).

In addition to finding inconsistencies in the record, the ALJ also found that Plaintiff's daily activities failed to indicate disabling limitations. Tr. 23. For example, Plaintiff admitted that he could cook five days per week, ride a bicycle, do light cleaning, do light shopping, and do laundry once per week. Tr. 23, 421, 461, 461, 464. As the ALJ noted, such evidence suggested a greater functional ability than alleged, especially in light of Plaintiff's allegations pertaining to his hand pain, shortness of breath, and related limitations, as many of those activities involved movement and use of the hands and fingers. Tr. 23.

The ALJ also noted that Plaintiff could maintain relationships with others, such as with his roommate and girlfriend; he was able to shop in a corner store; and he used a taxi, suggesting a greater social functional ability than alleged. Tr. 23, 39, 414, 464. Specifically, the ALJ observed that Plaintiff testified to social isolation, but he was involved in a bicycle accident in August 2014 and admitted he was riding his bicycle to a friend's house. Tr. 23, 70, 461. Similarly, Plaintiff testified that his girlfriend did shopping for him, but later acknowledged that he took periodic trips to a corner store for cigarettes. Tr. 23, 41-42, 464. Thus, the ALJ reasonably concluded that Plaintiff socialized more than he alleged. Tr. 23. These activities did not support Plaintiff's claims that he was unable to perform any type of work. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported

ALJ's finding that his testimony was not fully credible); see also 20 C.F.R. §§ 404.1529(c)(3)(i),

416.929(c)(3)(i) (ALJ must consider claimant's "daily activities" when evaluating symptoms).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise."). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("Once the ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise"); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including medical opinion evidence, treatment reports, and diagnostic testing, as well as Plaintiff's testimony, and those findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE